# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 3:26-cv-00281

| | |
|---|---|
| CAROL GILBERT,<br><br>       Plaintiff,<br><br>v.<br><br>GAMESTOP TEXAS, LTD,<br><br>       Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carol Gilbert ("Plaintiff") brings this action against Defendant Gamestop Texas Ltd ("Defendant") for violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.1, and alleges the following:

## PARTIES

1. Plaintiff Gilbert is a resident of Mecklenburg County, North Carolina.

2. Gamestop Texas Ltd ("Defendant" or "Gamestop") is an entity formed under the laws of Delaware, with a principal office located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Defendant employed Plaintiff during the events giving rise to this action.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the ADA and the FMLA.

1

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims because they arise from the same case or controversy.

6. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Plaintiff performed her work for Defendant from her home in Mecklenburg County, North Carolina, and Defendant directed employment decisions affecting Plaintiff in this district. Defendant is also subject to personal jurisdiction in this district because it employed Plaintiff here and conducted business here.

7. At all relevant times, Defendant was, and is, an "employer" within the definition of the FMLA, 29 U.S.C. § 2611(4)(A) on the basis that it employs more than 50 employees.

8. At all relevant times, Plaintiff was an "eligible employee" within the definition of the FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendant employed Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendant.

9. At all relevant times, Defendant was an "employer" within the definition of the ADA, 42 U.S.C. § 12111 on the basis that it employs more than 15 employees.

10. At all relevant times, Plaintiff was an "employee" of Defendant within the definition of the ADA, 42 U.S.C. § 12111.

11. At all times relevant to this action, Defendant possessed and exercised the power and authority to direct, control, and supervise the work performed by Plaintiff.

## ADMINISTRATIVE EXHAUSTION

12. Plaintiff satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination on November 21, 2025 against Defendant with the United

2

States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation.

13. The EEOC issued a Notice of Right to Sue on March 31, 2026. Plaintiff timely brings this action within ninety (90) days of her receipt thereof.

**GENERAL ALLEGATIONS**

14. On or about April 6, 2022, Plaintiff was offered by Defendant the position of Senior Human Resources Information System ("HRIS") Analyst.

15. On or about April 18, 2022, Plaintiff began her employment with Defendant in the Senior HRIS Analyst position. Her manager at the time was Alex Llewellyn, Vice President of HR Operations. Thereafter, her manager became Carolyne Wendel ("Wendel").

16. Plaintiff has documented disabilities of Attention Deficit Hyperactivity Disorder ("ADHD"), Generalized Anxiety Disorder ("GAD"), and Bipolar II disorder, which substantially limit one or more of her major life activities, including time management, communication, and task organization and completion. Plaintiff's disabilities also affected her ability to concentrate and sleep.

17. Plaintiff's disabilities were known to Defendant through her direct communications with management and Human Resources.

18. On or about June 4, 2025, Plaintiff was placed on a Performance Improvement Plan ("PIP") by Wendel. The reason for the PIP was that Plaintiff allegedly lacked follow-through and urgency in her work.

19. The timing of the Performance Improvement Plan—issued immediately prior to Plaintiff's request for medical leave—was inconsistent with Plaintiff's prior strong performance history and preceded her eventual termination.

3

20. Plaintiff had no prior disciplinary actions or performance issues while employed by Defendant.

21. Defendant's own records, including performance evaluations, reflect that Plaintiff was identified as playing a "critical role" in a U.S.-based Workday operations.

22. On or about June 11, 2025, Plaintiff submitted an FMLA claim to Defendant for medical leave related to her disabilities that would start on June 12, 2025, and end on August 13, 2025.

23. On or about June 11, 2025, Plaintiff also sent an email to Wendel, Gamestop's Human Resources, and the Benefits Department regarding her FMLA and ADA disclosure.

24. On the same day, Plaintiff received her FMLA paperwork from Defendant, including provider forms to be completed.

25. On or about June 13, 2025, Plaintiff's provider completed the FMLA paperwork for a leave period of June 12, 2025 to August 12, 2025, with an expected return to work date of August 13, 2025.

26. On or about June 17, 2025, Plaintiff's FMLA leave request was approved by Defendant.

27. Defendant approved Plaintiff's leave but did not inform Plaintiff at any time during her leave that her position was at risk of elimination.

28. On or about August 13, 2025, Plaintiff's provider completed an additional medical certification form seeking leave through September 9, 2025.

29. On or about August 14, 2025, Defendant approved an extension of Plaintiff's FMLA leave until September 3, 2025. Additional FMLA leave could not be approved because she had exhausted her FMLA leave benefits.

4

30. On or about September 4, 2025, Defendant granted Plaintiff a continuous leave of absence until September 9, 2025, as an accommodation for her disabilities.

31. Defendant's decision-making regarding Plaintiff's employment status occurred, at least in part, during Plaintiff's protected leave period.

32. On or about September 8, 2025, Plaintiff received a return-to-work letter from her provider stating she was cleared to return to work on September 10, 2025 on a half-day schedule through September 16, 2025, and she could resume her full-time work schedule beginning on September 17, 2025.

33. On or about September 10, 2025, the same day Plaintiff was cleared to return to work, Gamestop Benefits Coordinator Kelsey Criger ("Criger") confirmed that Plaintiff's return to work with the accommodation of working a half-day to start was approved. Criger informed Plaintiff that she should be able to log back into the system an hour after that confirmation.

34. That same morning, after multiple unsuccessful attempts to log in, as well as calls to the HR help line and the Tech help desk, Plaintiff received a call from Dominique Hopson ("Hopson") from HR during which she informed Plaintiff that her position was being eliminated. This occurred only three hours after Plaintiff was told her accommodation to work half-days when she returned to work was approved.

35. Plaintiff asked Hopson if the decision to eliminate her role was made within the last three hours after her accommodation had been approved. Hopson confirmed that the decision to eliminate Plaintiff's position had been made within approximately three hours of Plaintiff's return-to-work accommodation being approved.

36. Defendant's stated reason for Plaintiff's termination—elimination of her position due to restructuring—is inconsistent with Defendant's conduct and timing, including the fact

that: (a) Plaintiff continued to perform and was expected to resume work on U.S.-based projects; (b) Defendant approved multiple accommodations for Plaintiff's return to work on the same day her position was allegedly eliminated; (c) Defendant represented to Plaintiff that she would regain system access and resume work shortly before informing her of her termination; and (d) the decision to terminate Plaintiff was communicated within hours of her return from protected leave.

37. Defendant did not inform Plaintiff at any time prior to her return from leave that her position had been eliminated or that her employment was in jeopardy, despite ongoing communications regarding her return-to-work plan.

38. Upon information and belief, Defendant retained other employees in similar or comparable HRIS roles, including employees supporting U.S.-based operations, despite claiming that Plaintiff's role was eliminated.

39. The individuals involved in the decision to terminate Plaintiff were aware of Plaintiff's disabilities, her use of FMLA leave, and her requests for accommodations at the time the decision was made.

40. Defendant has provided shifting and inconsistent explanations regarding the timing and basis of the decision to eliminate Plaintiff's position, including representations that the decision occurred within hours of Plaintiff's return to work, despite later asserting that the decision had been made months earlier.

41. The temporal proximity between Plaintiff's protected activity—including her use of FMLA leave and requests for accommodations—and her termination was close in time.

42. On or about September 17, 2025, Plaintiff received an email from Accommodations Specialist Aryn Bussard ("Bussard") stating that Defendant approved the

6

accommodation requests Plaintiff had made to allow her one additional 20-minute break during her workday and an earlier start time of 6:15 am or 6:30 am.

43. On or about September 19, 2025, Plaintiff responded to Bussard's email asking when her accommodation requests were reviewed by Defendant and when they were approved.

44. On or about September 22, 2025, Bussard informed Plaintiff that her accommodation requests had been proposed to Defendant on September 10, 2025, which was the same day Plaintiff was terminated, and approved on September 16, 2025.

45. Defendant was aware that Plaintiff had requested and taken FMLA leave and had requested additional accommodations related to her disabilities.

46. Immediately following Plaintiff being approved for a return-to-work accommodation, and while other accommodation requests were pending, Plaintiff faced termination of her employment.

47. At all times, Plaintiff clearly communicated to Defendant that she wanted to return to work after her medical leave ended on September 9, 2025.

48. Plaintiff therefore alleges that Defendant discriminated and retaliated against her by terminating her because of her disabilities, her request for FMLA leave, her request for extended medical leave, and her requests for other accommodations.

## COUNT I

### Violation of FMLA – Interference

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

50. Defendant was aware that Plaintiff had a serious health condition and had requested and been approved for FMLA leave.

51. Defendant interfered with Plaintiff's rights under the FMLA by failing to restore Plaintiff to her position or an equivalent position upon her return from protected leave, as required by 29 U.S.C. § 2614(a).

52. Defendant denied, interfered with, and restrained Plaintiff from the lawful exercise of her FMLA rights by terminating her employment immediately upon her return from leave and failing to reinstate her, despite her ability and willingness to return to work.

53. Plaintiff was prejudiced because her job was not held open for her as required by the FMLA and she was ultimately terminated. Plaintiff has thus suffered damages because of Defendant's unlawful conduct.

54. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(1), by interfering with Plaintiff's lawful exercise of her rights under FMLA, was willful and/or lacking in good faith.

55. Defendant's violations were willful, as Defendant acted with knowledge of, or reckless disregard for, Plaintiff's rights under the FMLA.

## COUNT II

### Violation of FMLA – Retaliation

56. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

57. Plaintiff engaged in protected activity under the FMLA by requesting and taking FMLA leave.

58. Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

59. Plaintiff's exercise of FMLA rights was a negative factor in Defendant's decision to terminate her employment.

60. The close temporal proximity between Plaintiff's protected FMLA activity and her termination, together with Defendant's shifting and inconsistent explanations for the timing

8

and basis of the decision, support a causal connection between Plaintiff's FMLA activity and her termination.

61.     Defendant retaliated against Plaintiff in violation of 29 U.S.C. § 2615(a) by terminating her because she requested and took protected FMLA leave.

62.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered lost wages, lost benefits, and other damages.

## COUNT III

### Violation of ADA - Disability Discrimination

63.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

64.     At all relevant times, Plaintiff was a qualified individual with an actual or perceived disability.

65.     Prior to Plaintiff's diagnoses of ADHD, GAD, and Bipolar II and her requests for accommodation, Plaintiff was performing her job at a level that met her employer's legitimate expectations.

66.     Plaintiff was able to perform the essential functions of her position with or without reasonable accommodation at all relevant times.

67.     Defendant violated the ADA by terminating Plaintiff based on an actual or perceived disability in violation of 42 U.S.C. § 12112(a).

68.     Defendant's stated reason for Plaintiff's termination was a pretext for discrimination, as evidenced by the temporal proximity between Plaintiff's protected activity and her termination, Defendant's inconsistent explanations, and Defendant's treatment of similarly situated employees.

9

69. Defendant's actions occurred under circumstances giving rise to a reasonable inference of unlawful disability discrimination.

70. Plaintiff is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

71. Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

## COUNT IV

### Violation of ADA - Failure to Accommodate

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

73. Plaintiff notified Defendant of her ADHD, GAD, and Bipolar II, and of her need for accommodations related to those conditions.

74. On or about June 11, 2025, Plaintiff requested leave due to her ADHD, GAD, and Bipolar II, which was approved by Defendant.

75. Thereafter, on or about August 13, 2025, Plaintiff requested extended medical leave until September 9, 2025, which was approved by Defendant.

76. Thereafter, on or about September 8, 2025, Plaintiff requested accommodations that included working a half-day from September 10, 2025 through September 16, 2025, one additional 20-minute break during her workday, and an earlier start time of 6:15 a.m. or 6:30 a.m., which were approved by Defendant.

77. Although Defendant nominally approved certain accommodations, Defendant failed to provide Plaintiff with a meaningful opportunity to utilize those accommodations and instead terminated her employment immediately upon her return from leave.

78. Defendant failed to reasonably accommodate Plaintiff's known disabilities in violation of 42 U.S.C. § 12112(b)(5)(A).

79. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff suffered lost wages, lost benefits, and other damages.

## COUNT V

### Violation of ADA - Retaliation

80. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

81. Plaintiff engaged in protected activity under the ADA by disclosing her disabilities and requesting leave and workplace accommodations.

82. Defendant subjected Plaintiff to an adverse employment action by terminating her employment.

83. The close temporal proximity between Plaintiff's protected ADA activity and her termination, together with the timing of the approval of her requested accommodations and Defendant's shifting explanations, support a causal connection between Plaintiff's protected activity and her termination.

84. Defendant retaliated against Plaintiff in violation of the ADA by terminating her because she requested reasonable accommodations for her disabilities.

85. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered lost wages, lost benefits, and other damages.

## COUNT VI

### Wrongful Discharge in Violation of Public Policy

86. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

11

87. Defendant violated the public policy of North Carolina as set forth in N.C.G.S. § 143-422.1, et seq. by terminating Plaintiff because of her disabilities.

88. Defendant's conduct violates the public policy of North Carolina prohibiting discrimination on the basis of disability.

89. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

90. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

91. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

1. An Order awarding Plaintiff damages for Defendant's violation of the FMLA, including back pay, lost wages, employment benefits, liquidated damages, and any other compensation denied or lost because of Defendant's violation of the FMLA;

2. An Order awarding Plaintiff damages for Defendant's violation of the ADA, including, back pay, lost wages, employment benefits, compensatory damages, equitable relief, and any other relief available under the law;

3. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

12

4. An Order awarding Plaintiff punitive damages to the extent permitted by applicable law in an amount to be proven at trial;

5. An Order awarding Plaintiff the costs of this action;

6. An Order awarding Plaintiff reasonable attorneys' fees;

7. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

8. An Order granting any other necessary or appropriate relief to which Plaintiff is entitled under the law; and

9. An Order requiring reinstatement or, in the alternative, front pay.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
GESSNERLAW, PLLC
6146 Rea Road STE B7, Box #77126
Charlotte, NC 28277
Tel: (704) 234-7442
Email: michelle@mgessnerlaw.com